Case number 12-3169-12-3162-12-3143-0 Sierra Club v. United States Environmental Protection Agency Moral argument not to exceed 15 minutes for the petitioner 12 minutes for the respondent 3 minutes for the intervener Robert Criley for the defendant May it please the court, Robert E. Criley on behalf of petitioner Sierra Club I'd like to reserve 5 minutes Turning quickly to the standing issue I would just urge the court to review Ohio Utility Group's motion to intervene  particularly pages 2, 6, and 7 In that motion, Ohio Utility Group, who's on the other side of the case obviously makes all the arguments that we also make in support of our standing In terms of evidence in support of standing here am I correct in understanding that basically what you have is the wall affidavit, period and let's just not nod at the table, okay, it's one of my hang-ups It's just distracting, I'm sorry Is that true? Is it just the wall affidavit that we're looking at for purposes of standing here? There was also an affidavit from Nahi Kamfer Right, and that's, she's on behalf of the organization if I recall It's a he, but he works for the organization but he also discusses the membership including providing the number of members I just want to be candid with you I'm having a hard time seeing how the wall affidavit, which seems to be the more germane one here meets the test that the Supreme Court laid out in Summers The court in Summers said, so you're talking about regulation of a third party not regulation of your clients and Summers would seem to say that you have to show that there is going to be specific action by the regulated third parties that's going to hurt you not an abstract thing about, oh, you know, it's going to be easier for them to emit more particulates or whatever but something more like one of the coal factories in this area has bought a bunch of credits that they're now going to use because of the absence of the regulation you say is required here and that that is going to make the air worse Isn't that sort of more specific allegation, what Summers requires and what we don't have here? So there are three, well, A, I think that the standard is likely that you're likely to be harmed that you don't have to Clapper speaks to the standard, I mean the level of certainty Summers in a third party regulation case seems to speak to sort of the specificity of the showing you need to make and that's what I'm focused on right now Okay, so there are three injuries that will occur that will be redressed if the redesignation is reversed so one of them is that the sources will be subject to RACT, Reasonable Available Control Technology the sources are emitting currently, that's not disputed and they will be subject to a more stringent emission limitation and so that's very specific, that doesn't have anything to do with cap and trade You're saying that the status quo will be, unlike Summers where they're saying you have to allege the status quo is going to get worse you're saying actually the status quo will get better if these other measures are required Exactly Alright And I will point out that also there's at least one case, second circuit case, a NYPIRG case that has said you're reducing the uncertainty of being exposed to pollution is also a basis for standing So on that cap and trade program, the fact that Ms. Wall will be certain that the sources will not be able to increase their pollution under cap and trade is also a basis of standing and that's important because that does have practical effects in that Ms. Wall and other Sierra Club members, they curtail their activity they curtail their fundamental liberties because of the pollution Let me ask you about the other components of standing which you mentioned which is the level of certainty Let's say you're okay on specificity because you've shown that by operation of law really if RACT and the other thing, RACM or whatever is required those measures are going to be put in place but can you really meet the high level of certainty that CLAPR requires i.e. can you really show I guess that the air is going to be that much better almost certainly as a result of those Do we have that in this record? No, and I don't think that's required For example, in a Shell Oil case in the 5th Circuit the defendants had basically argued a tort kind of standard for standing  We don't have to show that pollution will be reduced by X level and as a factual matter in this case Why not? I mean CLAPR rejects the 2nd Circuit's reasonable likelihood test and says to show standing the threatened injury must be certainly impending Here it's kind of like the threatened benefit is certainly going to happen I guess you would have to show Every court that I'm aware of has said a reduction in pollution is the redress that you don't have to show an amount or that it'll all go away But also as a factual matter for PM2.5 there's a linear relationship according to EPA and all the science that less PM2.5 means less people get sick and less people die More PM2.5 means more people get sick and more people die There's not like a safe threshold How certain is it that the measures that you say should be part of the applicable plan are going to reduce PM2.5? Where in the record do we find that certainty? Again, for RACT it's certain that the sources will be subject to more stringent emission limits There's no place in the record that tells you what RACT will be once the states promulgate RACT nor I believe are we required to show what's going to be the result of a notice and comment rulemaking process For the other two, for non-attainment new source review again, even Ohio Utility Group, they say that it's likely and I believe that's sufficient and the same with the cap-and-trade program If sources are subject to source-specific emission limits rather than being able to participate in the cap-and-trade program it's likely that those sources will emit less but it is not possible to prove that Thank you So then turning to the merits The primary argument is that emission reductions that are not permanent are not permanent and that the statute requires that It's obviously a very straightforward argument and it's just, there's no level of deference that should allow the federal government to say that emission levels that can increase in the future are permanent Chevron deference does apply to our consideration of the EPA's interpretation of the meaning of permanent and enforceable, correct? Correct So what's the logic for saying no deference applies? I'm sorry, I'm saying no level Well maybe I misunderstood what you said I'm saying no level of deference You could have the highest standard of deference in the world and still something that's not permanent cannot meet the definition of permanent and in this case there should be although there is, there should be no dispute that emission levels that are legally allowed to increase because that's the very nature of cap-and-trade program are not permanent Well, as an interpretive matter for this provision 7407D3.3 why isn't the EPA correct when they say that the permanent and enforceable reductions that we're looking at here or the reference to permanent and enforceable reductions doesn't refer only to reductions in this area, in the Cincinnati area instead it refers to any reductions that cause the improvement here and in their view that encompasses a much broader area and that area is one where emissions as a whole is indeed capped and I think they would say reduced under their care or whatever it is and so you're mistaken in just assuming that we can only look at whether the Cincinnati area reductions are permanent We're not saying that the key phrase that you used is cause the reductions And that's not in the statute but I think that's a fair reading of it Right, but even EPA They say the improvement is due to permanent and enforceable reductions Why couldn't reductions in upwind areas would potentially in their expert judgment cause a reduction here? So that's the key word, potentially Even EPA admits that the best they can do is they say that increases in the Cincinnati area will at least in part, that's all they can say in part be offset by reductions from other places But that's not what the statute says Because then the reductions The statute says improvements in air quality is due to permanent and enforceable reductions But what all EPA can say is that permanent and enforceable reductions in part So what they're claiming is that if you reduce in Cincinnati area or you increase in Cincinnati area someone will increase in another area But EPA cannot say and they do not say that that decrease in the other area will have an impact on Cincinnati And as a matter of logic and also as a matter of their past analysis it won't So there's some, in other words there's some states in care where it just doesn't matter what those sources do Their pollution in those other states I understand And I better not let you go too long for a year from now Thank you Thank you Ms. Dona Ms. Dona May it please the court With me at council table is Kay True Ting of EPA Office of General Counsel and Aaron Farmer of the state of Ohio We'll be splitting our time I'll speak for 12 minutes and Aaron Farmer will speak for 3 minutes I want to, oh also Lou Tosi who's representing the interveners is present and available to answer questions So this dispute is particular to the 1997 fine particulate matter standard and that's very important here We're not talking about the 2012 standard We're not talking about additional benefits that improve the air more than what the standard is in 1997 Why is that important in your view? Because the Clean Air Act, as it says What issue is it important to, I guess, to start? Let me start with standing In regards to standing as we say in our brief and as I'll say here again Sierra Club has not demonstrated an injury that's sufficient for standing Isn't, I mean it would seem like a sufficient injury is I am in fact breathing dirtier air than I otherwise would be Well the key here in this case is the injury has to be tied to a specific legal interest That's where I fall off the wagon and I thought you might be going there I mean, you know I'm not aware that they need a statute that says you have a legal interest in breathing air at the 2012 regulation level than the 97 I mean, isn't it just enough for Article 3 standing that they're breathing worse air than more particulates than they otherwise would Their cause of action is under the Clean Air Act The Clean Air Act provides judicial review under Section 307 to be able to challenge EPA's decisions as set forth by Congress The Clean Air Act creates a legal structure to protect for clean air but it doesn't say there's going to be regulations up to the point where it is pristine air There's a balancing I mean I mean, this is Article 3 standing we're talking about, right? Correct I mean, there are Article 3 cases all day long, aren't there? Where the injury isn't one that's expressly recognized in a statute I mean, if there were I don't know In Lujan going to view the animals and the animals won't be there anymore if whatever it was continues you don't need a statute that says you have a recognized interest in viewing animals that otherwise might go extinct, right? Well, the statutory structure of the Endangered Species Act in that case is to protect the the Is there a case I'm sorry, go ahead protect particular animals Now, you couldn't say, well I want to go to a particular country and see this animal Well, the animal's not protected by that statute But that, just because this statute protects other animals it gives me standing I think, I mean, just to reduce what I understand the Sierra Club to be saying why doesn't it establish standing to say our members are worse off in terms of the air they are breathing than they would be if the EPA did it our way I think the key here is that they need to be able to articulate a particularized injury to them and that injury needs to be connected to the action here It seems like they've done that, frankly for the reasons that Judge Cunningham just suggested So here they have pointed to concerns about excessive pollution in general, I would say that's not a particularized injury and concerns about a generalized increase in fine particulate matter and the key is that the Clean Air Act simply does not provide an infrastructure for there never being any increase in air pollutant What the Clean Air Act does is it protects But that goes more to whether you have to do it their way the merits, then it goes to whether an injury can arise from your not doing it that their way because they're worse off in terms of the air they're breathing Let me make two key final points on the question of standing and then I'll turn to merits and if you have further questions I can address those I would point this court to the D.C. Circuit's recent decision that we notified the court of in our 28J letter There the allegations of injury were very similar to here and the D.C. Circuit found that they were insufficient both because there was no evidence that was presented to support these increased exposure or concerns about there being a being exposed to additional pollutants and in addition that their arguments about the protecting the legal system was simply they were abstract and uncognizable interests and that's what here let me step back and make clear that the Clean Air Act continues to protect against increases in pollutants it's simply that the non-attainment provisions will no longer apply here. There's what's called Prevention of Significant Deterioration Program That constrains There's a lot of stuff there but they think there are some specific things that aren't being met I don't know, maybe we should talk about that Well, I think How do you get around the wall case with regard to RACT? Right I know it dealt with like an ozone thing but isn't the operative language and the provision there and the provision here and feel free to remind me of what provision here, which one you think is the operative one here with regard to RACT but isn't the language the same and so we would have to follow the reasoning of wall The language is not the same So taking a step back the key for deciding this issue for the court is the interpretation of what we frequently call Section 172 C1, that's Title 42 U.S. C U.S. Code 7502 C1 That is what Sierra Club pointed to in its comments That's what the briefing has been on They are not asserting that this is an ozone area or that the ozone provisions which is in Section 182 what was addressed in the wall case is at issue here Well I think Judge Ketledge's question conceded that. It's just why is it not the reasoning I mean what do we do with wall So what you do with wall is you say wall interpreted the ozone subpart 2 protections. It's very clear in the background section of wall that's specifically what they were looking at in the discussion in the case where they are doing their analysis it was specific to that ozone subpart 2 and the key is that there, there was a requirement for a submission that's what, so if you look at the language and the two different statutory provisions, they are very different from each other. Hang on let me try again In these kinds of cases, you know they are hard cases, you know for people who don't work in this area every day, so you kind of have to get in your mind what's the key to the way the issue should be resolved and with respect to the issue we are currently talking about, I believe the key, see if we agree is that Chevron deference is applicable to your determination that the inclusion of these rack-a-rat whatever they are, is not applicable in this context. I mean applicability is the key word. That is true and the court in order to make that determination needs to look at the specific statutory language which Okay now, so so does that give us any insight into the applicability or lack of applicability of law? Right, so let's take a step back as you noted, the Clean Air Act is a very complicated statute the the term or the phrase reasonable available control technology is a term of art it's first set forth in the section 172 section. There's EPA multiple courts have held that that phrase is ambiguous. The DC circuit did so and the NRDC decision in 2009 they have a very nice explanation about why that portion of the statute is ambiguous and why EPA's interpretation of it is reasonable now why it's not applicable here under section 107 which is what we're talking about in the redesignation is because you have to look at the definition of what what it says in section 172 it says EPA, these state plans should include measures that will bring the area into attainment as expeditiously as possible and that can include these technology rules or measures but essentially it's a general overarching prescription that when EPA is evaluating state plans that are submitted to them by the individual states that they should investigate whether those plans include and are doing the analysis that's required to do to evaluate whether there should be rules to help bring the area into attainment. Here the area is attaining the area was attaining when EPA did its decision. So if you say are there any rules that need to bring the area into attainment the area is in attainment, there's nothing more to be done to bring them into attainment. So that general overarching requirement that's in section 172 doesn't apply. What, which of the five requirements for redesignation in 7407 D3 are we, are you interpreting with respect to the RACM issue? So in this context Sierra Club has pointed to criteria number two so it's this. I'm kind of asking which one you think is germane to the issue we're now discussing and thus the one, I mean which one are we deferring to you on in your view? Which one of these five? So there's two areas where EPA, where there's ambiguous interpretations first in the term applicable the term applicable is ambiguous the court held that in wall in regards to subcourt five but I think the same reasoning applies here. And then um the term so then you have to say okay well now I need to, you can look further into that and you can say well also reasonable available technologies that term is also ambiguous and EPA's interpretation of that is also entitled to Chevron. So we're deferring in your view to the, your interpretation of applicable as used in the second and fifth requirement? That's correct. Didn't Judge Easterbrook disagree with your interpretation? In the Sierra Club case? No. I thought you said applicable included you know the plan before My reading of that case and the, I think the key pin site for that is going to be pages 541 through 542 is that um that the term applicable has been used in different ways in different parts of the statute and EPA in that context um had a fair reading of what In fact Judge Gilman talks about that in wall. That's correct. Yeah so there is um I don't know of any precedent that in fact says the applicable would be entitled to Chevron's step one analysis. Um The I see that my time's out. I would like to just make one point in regards to this cap and trade program issue. It's very important to recall and I think Judge Ketledge was thinking about this. That fine particulate matter is a regional pollutant. There are 11 upwind sources or contributing pollutants that affect at any point in time the area that's part of the Cincinnati area. And these programs that it's demonstrated in the data that year after year the air has been improving in terms of the levels of fine particulate matter. So Sierra Club is making a lot of conjectures about what they hypothetically think could happen in the future. The data doesn't support that. And furthermore there is a new program that will be going into effect. It's this cross state air pollution rule. And it includes additional protective measures that are called assurance provisions. And those assurance provisions it's very complicated but effectively what it does is that it further ensures that the measures that restrain pollution and other upwind states are not going to be violated. So this concern that Sierra Club has about banking and trading, it's not supported by the data. And there are provisions in place that restrain the trading such that there won't be those sorts of violations in the future. In terms of explaining why EPA did what it did, that drop in the numbers has to do with the not requiring inclusion of the whatever in the state plans. Is that right in terms of decision making? Well I think EPA views like I was explaining before EPA views these RACM RACT provisions very differently. What Sierra Club presents in its briefs I think is a misrepresentation of what RACT is. They suggest that it's a simple emissions limit that's set and then everyone has to incorporate it. That's not what it is. It's simply an analysis about moving forward towards attainment. Okay so that said... Putting it another way at least the decision to continue with cap and trade during the relevant time period was related to the drop in the numbers. That is true and there is... So the drop in the numbers the only point I'm asking you about is the drop in the numbers did influence EPA's decisions with respect to these matters right? And EPA relied on looked specifically at the drop in the numbers, looked at the causes, looked at numerous factors that affected the emission reductions. It was reinforced in its view that this, the multi-state approach that is afforded under cap and trade was in fact an effective one. Is that right? Okay. That's correct. Unless the court has further questions EPA's decision was well reasoned and should be upheld. Mr. Farmer. May it please the court. The state of Ohio wants to ensure that this court recognizes that this decision, this issue is about redesignation. It's about Ohio having and using the tools that EPA provides to ensure the redesignation occurred appropriately. It's nothing, it's not a, it shouldn't be an attack on cap and trade programs in general as Sierra Club is trying to do. And to begin I'd like to talk about RACT. The standard is RACT is not necessary unless it hastens achievement of attainment. This is the holding in the NRDC v. EPA case as well as the Sierra Club v. EPA case. These are DC circuit cases that dealt with the exact provision at issue 42 U.S.C. 7502 C.1. Well aren't we starting with 7407 D.3 here? That's correct. I mean, so walk me through how we get from this provision to 7502. D.3.2, these are the applicable SIP. And Sierra Club is claiming that the applicable SIP hasn't been established here because RACT has not been implemented. But the case law in the DC circuit that dealt with this exact general RACT provision, 7502 C.1 says that RACT is not necessary unless it hastens achievement of attainment. The facts support this conclusion in this case. Modeling was done by Ohio and it proved that attainment could not be hastened by RACT. I mean, I thought your argument was it's inapposite by its terms because you've already hit the attainment numbers. So you say the standard is it doesn't apply unless it hastens attainment. Why in your view is that standard not met here? Or met, whichever one. RACT is not required because achievement can't be hastened because the modeling demonstrated that RACT would not help achieve attainment. Ohio was going to achieve attainment on the timeline. Are you talking pre, I mean, back when this area was out of attainment? Yes, as a part of an attainment demonstration. Ohio proved that modeling, through modeling, that RACT would not help Ohio achieve attainment any earlier than it was expected to achieve attainment, which was 2009, in the year of 2009. So that fact pattern fits perfectly into the holding of the NRDC and Sierra Club cases of the EPA out of the DC circuit that dealt with this exact RACT decision. Now moving on to the permanent forcible reductions. What's critical here is the standard text of the statute says improvement of air quality must take place in the non-attainment area by permanent forcible reductions in emissions. It's not necessary that the permanent forcible reductions take place in the non-attainment area. It's that the improvement of air quality does. This provides ample flexibility for EPA to promulgate rules such as cap-and-trade programs to not only cap the emissions at the unit itself and also a regional cap, which provides a market-based approach to lower emissions overall. And that's what's important for this court to remember in this case. It's not an attack on cap-and-trade. It's a not arbitrary in its designation. It should be affirmed. That's the amount of time. Any questions? Thank you, Your Honors. Thank you. Counsel for EPA said that she wasn't aware of any precedent where applicable and the ambiguousness of it was questioned. But actually that's exactly what Wall held with regard to RAC. In Wall, EPA offered three retorts and they're enumerated in the opinion. Number one is exactly what EPA is also arguing in this case that applicable is ambiguous. And what the court said there is it may be ambiguous, but Congress clearly wanted RAC to be there and to get back to the question about which the differences between the statutory provisions in Wall, and sorry to mix and match the organic with the USC sites, but in Wall, the court was citing to Clean Air Act section 182b2. What section is that in the code? I'm sorry, I can't do the conversion on the front. I wanted to look at both, but we'll figure it out. Go ahead. I'm sorry about that. But it's at page 440 in the Wall decision and they cite to 182b2 and it's the mandatory language there the state shall submit RAC. It's basically what the statute says. You have the same mandatory language? Yes. And what provision exactly? So in our case, we're relying on 42 USC 7502 C1 and it has the same mandatory language. It says such plan provision shall provide shall provide for the implementation including RAC. Well, is it that in Wall it looks to me like looking just at the wording, the term applicability, it was not in dispute. There were various occurrences of the word applicability discussed in Wall. The provision that the Wall court ultimately found to require inclusion of the RAC measures that the RAC applicability requirement was not in dispute. Correct? It was. Why does Judge Gilman say I had it just a minute ago Oh, here it is. He says in contrast the applicability of the RAC rules to redesignation request. He's not talking about this context obviously. He's talking about ozone. It's not in dispute. And then he goes on and he talks about how the statutory language is not ambiguous. Apparently EPA didn't contest that there was no dispute about the version of applicability that he found required a disapproval of the redesignation. Correct? I guess I read it differently. At page 440 the opinion lists three arguments by EPA to defeat the applicability of RAC and the first to defeat RAC and the first listed one is that applicable is ambiguous and therefore EPA has discretion to interpret it and the court rejected that because of the mandatory language in 182. I will concede that I could be mistaken. It's almost impossible to read an opinion about a statute without the opinion here and the statute here. I mean the opinion says the applicability of the resolution request is not in dispute. Doesn't that mean applicability was not at issue in this case as the EPA is saying it is applicable in this case as it wasn't there. The twist in the Wall case was that EPA wanted to have the RAC as a contingency measure rather than actually in the SIP. I think that's all he's acknowledging is that in that case EPA said it has to be there it's just we're allowed to stick it in as a contingency measure rather than actually have it in place. But later on like I said there are the three articulated reasons for EPA why they think that they can do that and the first articulated reason was. Let me ask you a question because we're short on time. Which of the five redesignation requirements in your opinion are violated by the absence of RAC and RACM? We're just arguing about RAC. RAC encompasses RACM whatever you call it. Which one or one? The requirement which I think is little i.i. The one that says you have to have a complete SIP. Just two not five? I'm not sure if we argued. I think that two would be sufficient. I'm not sure if we argued in the alternative in our brief. Why isn't two just simply a procedural requirement that the administrator in fact approve a plan? I mean it says the administrator has fully approved the applicable implementation plan. Why isn't that just asking whether the administrator has in fact approved what the administrator thinks is an applicable plan and then we fight about what the plan needs to include under five. Under the fifth requirement. I I I I think well that's not EPA's position. It's not I'm just asking why isn't I mean that's a question I have. I know it's complicated. If it's something you haven't thought about that's okay. We'll look at the briefs. Yeah I do think both two and five can support it. These requirements are in they're not part of section 7410 right? So you have to say. Well in a sense they are actually 7410 A2 capital I requires non-attainment SIPs and so by reference those are in there. Is this 7502 is this in part D of this subchapter? Yes. Okay that's helpful. Thank you. Anything further? Thank you for your time. We appreciate the argument that all of you have given and we'll consider the case carefully. Thank you.